JUDGE FURMAN, specially concurring.
¶ 23 I write separately to address why I would not grant the Department's petition for rehearing.
¶ 24 Because a termination of parental rights case involves constitutional and statutory requirements, I address two fundamental questions: (1) What is the constitutional standard of proof in proceedings involving termination of a parent-child relationship? (2) Does People in Interest of J.W. , 2017 CO 105, 406 P.3d 853 apply to our opinion? I answer the first question by discussing our supreme court's opinion in People in Interest of A.M.D. , 648 P.2d 625 (Colo. 1982). I then answer the second question by discussing the supreme court's opinion in J.W.
I. Constitutional Standard of Proof
¶ 25 In A.M.D. , our supreme court explained constitutional due process requirements for a juvenile court to terminate parental rights. First, the court recognized the following:
The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do *541 those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.
A.M.D. , 648 P.2d at 632 (quoting Santosky v. Kramer , 455 U.S. 745, 753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ).
¶ 26 Second, the court determined that, "in Colorado, a dependency or neglect proceeding and the resulting adjudication provide the jurisdictional bases for State intervention to assist the parents and child in establishing a relationship and home environment that will preserve the family unit." A.M.D. , 648 P.2d at 640.
¶ 27 Third, the court determined that "clear and convincing evidence is the appropriate constitutional standard of proof in proceedings involving termination of a parent-child relationship." Id. at 631. But, the court explained that only
when conditions have so deteriorated that a child is abandoned ... or a parent is deemed unfit when tested by demanding standards ... is a parent-child relationship to be terminated. Termination is an unfortunate but necessary remedy when all reasonable means of establishing a satisfactory parent-child relationship have been tried and found wanting.
Id. at 640 (citations omitted).
¶ 28 Thus, here, before seeking to terminate parental rights, the Department must have intervened into the lives of mother and her child and used all reasonable means of establishing a satisfactory parent-child relationship. Using all reasonable means of establishing a satisfactory relationship could only have been accomplished by developing an appropriate treatment plan approved by the court at a dispositional hearing. See § 19-3-507(1)(a), C.R.S. 2017; see also § 19-1-103(10), C.R.S. 2017 (defining an appropriate treatment plan as one that is "reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs"). Because the court did not approve an appropriate treatment plan at a dispositional hearing, the Department did not use all reasonable means of establishing a satisfactory parent-child relationship. We, therefore, reversed the judgment terminating parental rights and remanded the case with directions for the court to hold a dispositional hearing because the constitutional and statutory standards of proof had not been met.
II. Application of J.W.
¶ 29 In my opinion, J.W. does not apply to the present case because J.W. analyzed whether the court had jurisdiction to terminate parental rights, which was not at issue in this case.
¶ 30 J.W. first held that the failure of the juvenile court to reduce a dependency and neglect adjudication to writing did not divest the juvenile court of subject matter jurisdiction to later terminate mother's parental rights. Id. at ¶ 4. But, no one here disputed the subject matter jurisdiction of the juvenile court to hold a termination of parental rights hearing.
¶ 31 J.W. also held that respondents in dependency and neglect cases may consent by their words and conduct to the personal jurisdiction of the juvenile court. Id. at ¶ 25. But, no one here disputed the personal jurisdiction of the juvenile court to supervise the Department's intervention into the lives of mother and her children to establish a satisfactory parent-child relationship.
¶ 32 The question in this case is not whether mother consented to the personal jurisdiction of the juvenile court, or whether the juvenile court had jurisdiction to terminate her parental rights. Rather, the question is whether the constitutional and statutory standards of proof were satisfied. J.W. does not help us answer that question.
¶ 33 Because the juvenile court did not approve an "appropriate treatment plan" at a dispositional hearing, the court lacked the prerequisites to find that mother was unfit. See People in Interest of S.N-V. , 300 P.3d 911, 915 (Colo. App. 2011) ("For a parent's 'treatment plan' to be 'appropriate,' it must be 'approved by the court' and be 'reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and ... relate[
*542 ] to the child's needs.' " (quoting § 19-1-103(10), C.R.S. 2011 ) ). I, therefore, concur with the majority and vote to deny the petition for rehearing.